1  EVE H. KARASIK (State Bar No. 155356)
   JOHN-PATRICK M. FRITZ (State Bar No. 245240)
2  ROBERT M. CARRASCO (State Bar No. 334642)
   LEVENE, NEALE, BENDER,
3  YOO & GOLUBCHIK L.L.P.
4  2818 La Cienega Avenue
   Los Angeles, California 90034
5  Telephone:  (310) 229-1234
   Facsimile:  (310) 229-1244
6  Email: EHK@LNBYG.COM; JPF@LNBYG.COM; RMC@LNBYG.COM

7  Proposed Attorneys for Chapter 11
8  Debtor and Debtor in Possession

9              UNITED STATES BANKRUPTCY COURT
10              CENTRAL DISTRICT OF CALIFORNIA
                    LOS ANGELES DIVISION
11

12  In re:                        ) Case No.: 2:24-bk-11857-DS
                                   )
13  BEN NYE CO., INC.,            ) Chapter 11 Case
                                   ) Subchapter V
14         Debtor and Debtor in Possession.  )
                                   ) **DEBTOR'S APPLICATION TO**
15                                 ) **EMPLOY FERGUS, A LAW OFFICE**
                                   ) **AS SPECIAL LITIGATION COUNSEL;**
16                                 ) **DECLARATION OF GARY FERGUS IN**
                                   ) **SUPPORT THEREOF**
17                                 )
18                                 ) [No hearing required unless requested –
                                   ) L.B.R. – 2014-1(b)]
19                                 )
                                   )
20                                 )
                                   )
21                                 )
                                   )
22                                 )
                                   )
23                                 )
                                   )
24                                 )
                                   )
25                                 )
                                   )
26                                 )
                                   )
27  _____ )

28

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE:**

Ben Nye Co., Inc., a California corporation (the "<u>Debtor</u>" or "<u>BNC</u>"), debtor and debtor in possession in the above-referenced Chapter 11 bankruptcy case respectfully submits this Application ("<u>Application</u>") for authority to employ Fergus, a Law Office ("<u>Fergus</u>") as its special litigation counsel under 11 U.S.C. § 327(e), with compensation pursuant 11 U.S.C. § 330, effective as of March 11, 2024 the date of the Debtor's bankruptcy filing (the "<u>Petition Date</u>").

**I.**

**CASE BACKGROUND**

1.    The Debtor commenced its bankruptcy case by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code (the "<u>Bankruptcy Code</u>") on the Petition Date. The Debtor elected subchapter V on its bankruptcy petition and is a small business debtor as defined by 11 U.S.C. § 1182(1).

2.    The United States Trustee (the "<u>UST</u>") has appointed Gregory K. Jones as subchapter V trustee (the "<u>Trustee</u>") pursuant to 11 U.S.C. § 1183(a).

3.    The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code.

4.    The Debtor was founded in 1966 by Ben Nye, Sr., a renowned make-up artist whose career spanned four decades.

5.    Ben Nye Sr. served as makeup director of 20th Century Fox Studio ("<u>Fox Studio</u>") for 23 years and supervised the production of over 500 feature films. He worked on the iconic "Gone with the Wind", making up Olivia de Havilland, Leslie Howard and Hattie McDaniel, the first Black actor to win an academy award. In 1968, Ben Nye Sr. was awarded a special Academy Award for Makeup for his last film work on "Planet of the Apes."

6.      Based on his vast experience, Ben Nye Sr. developed his own line of professional cosmetics especially formulated for high intensity lighting and durability. He also designed make-up for every skin tone, including a complete line for Black, Hispanic and Asian performers. After he retired from Fox Studio in 1967, he began selling his own line of makeup primarily to film studios.

7.      In 1970, Ben Nye Sr.'s son, Dana Nye, joined the company as Vice President of Sales and began marketing the Ben Nye make-up line to college and high school drama departments across the country. The Company began advertising in Theatre Craft, an industry magazine circulated to drama departments and theatre companies and began exhibiting at trade shows catering to costume shops and contacting theatre supply houses. Over the years, the Company developed an extensive line of student makeup kits designed for the educational theatre marketplace.

8.      In May 1975, Ben Nye Sr.'s health declined, and Dana Nye became the Company's President. In July 1979, Dana Nye purchased all of the Company's shares and became the sole shareholder until March 2020, when Dana Nye assigned his BNC shares to the "Dana Nye and Gina Nye, as trustees of the Nye Family Trust U/T/D April 11, 2012."

9.      As president, Dana Nye has been dedicated to enhancing the quality and image of BNC products. He has traveled extensively exhibiting at trade shows and building a network of authorized dealers, who own brick and mortar stores marketing to the performing arts.  The Company's market has not been directed toward the general public, commonly referred to "streetwear" make up.

10.      The Company is a family business with a good work environment. Of its 35 employees, 16 employees have worked there between 11 to 38 years. Excluding the owners, the average service tenure is 13 years. The knowledge and productivity of its employees has been instrumental in developing new products, improving product quality and providing excellent product delivery.

11.    Today, the Company is considered a leading manufacturer of professional cosmetics, which are sold throughout the United States and abroad. It is recognized for its high quality, extensive product line and excellent customer service.

**B.    The 2017 BNC Revenue Rise and Challenges Thereafter**

12.    In 2013, the Company had gross revenues of $8,732,138. In a 2014 interview, Kim Kardashian's make-up artist mentioned he used the Company's banana powder on Kim. Given Kim Kardashian's celebrity star status, this interview sparked a surge in public demand for the Company's banana powder and boosted sales of other Company products, resulting in 2014 gross revenue of $10,157,999. In response, however, most of the Company's competitors copied the banana powder, and Kim Kardashian introduced her own line of make-up, as well, cutting deeply into the Company's sales for the next few years. By 2017, the unusually high demand for BNC products subsided, and BNC revenue fell back to the 2013 levels.

13.    By 2018, long-time brick and mortar dealers began to retire or close business in response to e-commerce. The Company's largest dealers transitioned to expand their on-line business. For the first time, the Company's revenue started to decline, but the business remained marginally profitable.

14.    In 2020, the impact of the Covid-19 pandemic, hit the Company very hard.

15.    Covid-19 restrictions shut down the performing arts, and colleges, universities, and Halloween activities stopped. The Covid-19 revenue impact on the Company's business was devastating as the Company's gross revenues fell 42% from the prior year.

16.    Despite terminating 25% of the Company workforce, managers taking payroll cuts, and the Company cutting all expenses to the bone, the Company incurred a significant net loss of $718,304 in 2020.

17.    In the second half of 2021, Covid-19 restrictions eased, and the business started to slowly recover. Although 2021 revenue fell back to the 2005 level, the Company managed an operating income of $258,102. The Company's net income was significantly boosted to $2,045,644 from two forgiven PPP loans totaling $1,182,014, and ERTC filings of $646,329.

18.    In 2023, the Hollywood writers' and actors' strikes and an exceptionally weak Halloween season adversely affected the Company's revenue, which declined to $5,554,300 from $5,809,725 in 2022.

**C.    Asbestos Lawsuits against BNC**

19.    In December 2004, the Company received a lawsuit filed by Ms. Audrey Giero claiming personal injury from alleged exposure to asbestos allegedly in the Company face powder she used. This was the first lawsuit against the Company for any personal injury claimed from its products. The Company did intensive research and found no evidence of asbestos in its products. The Company did not have insurance for this type of claim and spent about $50,000 in its defense. The case was dismissed in 2005 without settlement.

20.    Seventeen years later, and still while weathering the impact of Covid-19, in July 2021, the Company received its second lawsuit filed by Mr. David Rody claiming personal injury from alleged exposure to asbestos allegedly in BNC face powder he had used. The Company denies that it manufactured face powders that contained talc with asbestos. In the Rody case, the Company was among 60 defendants and vigorously defended its position, spending $513,929 in legal fees, including a settlement of $37,500 in May 2023.

21.    Since then, the Company has been named as a defendant in eight (8) more asbestos lawsuits. One of these lawsuits against the Company was dismissed by the plaintiff without a settlement after the Petition Date. In these lawsuits, the Company is named with multiple defendants, including many very large well-known companies, (e.g., Maybelline LLC, Kaiser Gypsum Company, Inc., and Walgreen, Co., among many others).

22.    Asbestos related personal injury lawsuits are complex and expensive to defend, and the Company has no insurance for its defense. The Company legal fees defending these cases have steadily risen. The Company incurred related legal fees of $62,513 in 2021, $301,945 in 2022, and $407,289 in 2023. These continued legal fees are unsustainable for the Company. The twin burdens of legal fees and revenue decline outside of the Company's control resulted in a net income loss of $453,102 for the year ending December 31, 2023. As a result the cash

1    position has been substantially depleted.   The Company is a defendant in an asbestos trial

2    scheduled for April 15, 2024, in California.  Legal counsel has advised the Company that this

3    trial is likely to incur legal fees between $400,000 and $500,000.  Such an amount will fully

4    exhaust the Company's present cash position and effectively stop its ability to operate.

5    Furthermore, the Company would not have any resources to defend against its remaining

6    lawsuits.

7         **D.     The Subchapter V Chapter 11 Bankruptcy Case.**

8         23.     Given the Company's inability to finance the defense and settlement of the

9    pending asbestos claim litigation through insurance or otherwise, BNC has commenced a

10   subchapter V chapter 11 case (the "Bankruptcy Case") to restructure its historic, long-standing

11   business. The Company's goal is to confirm a plan of reorganization in its Bankruptcy Case as

12   expeditiously as possible.

13        24.     Accordingly, the Debtor determined in its reasonable business judgment that it

14   was in the best interest of its estate to file this current Bankruptcy Case to preserve the going-

15   concern value of its business and save the jobs of its employees.

16        25.     The Debtor intends to propose a subchapter V plan in good faith to reorganize its

17   financial affairs, repay its creditors, and avoid a senseless and unnecessary liquidation.

18                                          **II.**

19              **EMPLOYMENT OF FERGUS AS SPECIAL LITIGATION COUNSEL**

20        26.     The Debtor seeks to employ Fergus as special litigation counsel pursuant to 11

21   U.S.C. § 327(e), with compensation pursuant to 11 U.S.C. § 330 as set forth herein, at the

22   expense of the Debtor's bankruptcy estate, and to have the Debtor's employment of Fergus be

23   deemed effective as of March 11, 2024. The Debtor seeks to employ Fergus for the purpose of

24   analyzing asserted asbestos injury claims in this bankruptcy case. As detailed above, the Debtor

25   is subject to eight different asbestos personal injury lawsuits and requires special litigation

26   counsel to address any asbestos personal injury claims filed in this case.

27

28

27.     Subsection 327(e) provides in pertinent part that a debtor in possession "may employ, for a specified special purpose . . . an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. §§ 327(e) and 1107. Prior to the Petition Date, starting in 2023, Fergus was retained by the Debtor to provide legal counsel in connection with the asserted asbestos personal injury claims in the context of a bankruptcy. Mr. Fergus was paid $2,747.50 for these services.

28.     Fergus consists of one principal attorney, Gary S. Fergus, Esq., who will be responsible for rendering services to the Debtor. A statement of Mr. Fergus's qualifications is attached as **Exhibit 1** to the annexed declaration of Mr. Fergus (the "Fergus Declaration").

29.     Subject to Court approval and in accordance with 11 U.S.C. § 330(a), interim and final compensation will be payable to Fergus on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Fergus. Mr. Fergus's standard billing rate is $825.00 per hour. Mr. Fergus has agreed to a ten percent discount for services provided in this case and will charge $742.50 per hour.

30.     In March 2024, Fergus entered into an engagement agreement[1] and has been provided a prepetition retainer of $10,000. Pre-Petition, Fergus did not draw on the retainer.

31.     Fergus has placed the Retainer into his client trust account and will draw down from those funds on a monthly basis in accordance with the common procedures of this District to assist Fergus with its cash flow needs, recognizing that all post-petition fees and expenses paid to Fergus must be ultimately approved by the Court after notice and a hearing.

32.     Fergus has not received any lien or other interest in property of the Debtor or of a third-party to secure payment of Fergus's fees or expenses.

---

[1] A true and correct copy of the engagement agreement is attached as **Exhibit 2** to the Fergus Declaration. The engagement agreement contains a mandatory arbitration clause; however, Fergus and the Debtor agree that this Bankruptcy Court shall have jurisdiction to adjudicate any dispute that arises between the Debtor and Fergus related to this Application and fees and expenses sought in this case so long as the bankruptcy case remains pending.

33. Fergus has no pre-petition claim against the Debtor.

34. Fergus will seek Court authority to be paid from the Debtor's estate for any and all post-petition fees incurred and expenses advanced by Fergus. Fergus recognizes that the payments of any such additional fees and expenses will be subject to further Court order after notice and a hearing.

35. Fergus has not shared or agreed to share its compensation for representing the Debtor with any other person or entity, except among its members.

36. Fergus will provide monthly billing statements to the Debtor that will set forth the amount of fees incurred and expenses advanced by Fergus during the previous month.

37. Fergus understands the provisions of 11 U.S.C. §§ 327, 330 and 331 which require among other things, Court approval of the Debtor's employment of Fergus as special litigation counsel and of all legal fees and reimbursements of expenses that Fergus will receive from the Debtor and the Debtor's estate. Fergus seeks to be employed pursuant to 11 U.S.C. §§ 330 and 331.

**III.**

**ADDITIONAL DISCLOSURES PURSUANT TO RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

38. Fergus is not a creditor, an equity security holder or an insider of the Debtor.

39. Fergus is not and was not an investment banker for any outstanding security of the Debtor. Fergus has not been within three years before the Petition Date an investment banker for a security of the Debtor, or an attorney for such an investment banker for any security of the Debtor.

40. As set forth in the Fergus Declaration, Fergus does not hold or represent any interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment bank of any security of the Debtor, or for any other reason.

41.  As further set forth in the Fergus Declaration, Fergus does not hold or represent any interest materially adverse to the Debtor or the Debtor's estate, and Fergus is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.  Also, to the best of Fergus's knowledge, Fergus has no prior connection with the Debtor, any creditors of the Debtor or its estate, or any other party in interest in this case, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

42.  The Debtor believes that its employment of Fergus upon the terms and conditions set forth above is in the best interest of the Debtor's estate.

**WHEREFORE**, the Debtor respectfully requests that the Court approve the Debtor's employment of Fergus upon the terms and conditions set forth above.

Dated: March 29, 2024          BEN NYE CO., INC.

By: _____
DANA NYE
PRESIDENT

Dated:  March 29, 2024

By: _/s/ Eve H. Karasik_
EVE H. KARASIK
JOHN-PATRICK M. FRITZ
ROBERT M. CARRASCO
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Proposed Attorneys for Debtor and
Debtor in Possession

## DECLARATION OF GARY FERGUS

I, GARY FERGUS, hereby declare as follows:

1.     I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.     I am the founder of Fergus, a Law Office ("Fergus"). I am an attorney licensed to practice law in the State of California.

3.     Ben Nye Co., Inc., a California Corporation (the "Debtor" or "BNC"), debtor and debtor in possession in the above-referenced Chapter 11 bankruptcy case commenced its bankruptcy case by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code (the "Bankruptcy Code") on March 11, 2024 (the "Petition Date"). The Debtor elected subchapter V on its bankruptcy petition and is a small business debtor as defined by 11 U.S.C. § 1182(1).

4.     The Debtor seeks to employ Fergus as special litigation counsel pursuant to 11 U.S.C. § 327(e), with compensation pursuant to 11 U.S.C. § 330 as set forth herein, at the expense of the Debtor's bankruptcy estate, and to have the Debtor's employment of Fergus be deemed effective as of March 11, 2024. As detailed above, the Debtor has been named as a defendant in seven (7) different pending asbestos personal injury actions. The Debtor seeks to employ Fergus for the purpose of providing legal counsel in connection with the asserted asbestos personal injury claims in the bankruptcy case.

5.     Subsection 327(e) provides in pertinent part that a debtor in possession "may employ, for a specified special purpose . . . an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. §§ 327(e) and 1107. Prior to the Petition Date, starting in 2023, Fergus was retained by the Debtor to provide legal counsel as to the treatment of asbestos claims in a possible bankruptcy. I was paid $2,747.50 for these services.

6.    Fergus consists of one principal attorney, Gary S. Fergus, Esq., who will be responsible for rendering services to the Debtor.  A statement of my qualifications is attached as **Exhibit 1** to this Declaration.

7.    Subject to Court approval and in accordance with 11 U.S.C. § 330(a), interim and final compensation will be payable to Fergus on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Fergus. My standard billing rate is $825.00 per hour.  I have agreed to a ten percent discount for services provided in this case and will charge $742.50 per hour.

8.    In March 2024, Fergus entered into an engagement agreement[2] and has received a prepetition retainer of $10,000. Pre-Petition, Fergus did not draw on the retainer.

9.    Fergus has placed the Retainer into his client trust account and will draw down from those funds on a monthly basis in accordance with the common procedures of this District to assist Fergus with its cash flow needs, recognizing that all post-petition fees and expenses paid to Fergus must be ultimately approved by the Court after notice and a hearing.

10.    Fergus has not received any lien or other interest in property of the Debtor or of a third-party to secure payment of Fergus's fees or expenses.

11.    Fergus has no pre-petition claim against the Debtor.

12.    Fergus will seek Court authority to be paid from the Debtor's estate for any and all post-petition fees incurred and expenses advanced by Fergus. Fergus recognizes that the payments of any such additional fees and expenses will be subject to further Court order after notice and a hearing.

13.    Fergus has not shared or agreed to share its compensation for representing the Debtor with any other person or entity, except among its members.

---

[2] A true and correct copy of the engagement agreement is attached as **Exhibit 2** to the Fergus Declaration.  The engagement agreement contains a mandatory arbitration clause; however, Fergus and the Debtor agree that this Bankruptcy Court shall have jurisdiction to adjudicate any dispute that arises between the Debtor and Fergus related to this Application and fees and expenses sought in this case so long as the bankruptcy case remains pending.

14. Fergus will provide monthly billing statements to the Debtor that will set forth the amount of fees incurred and expenses advanced by Fergus during the previous month.

15. Fergus understands the provisions of 11 U.S.C. §§ 327, 330 and 331 which require among other things, Court approval of the Debtor's employment of Fergus as special litigation counsel and of all legal fees and reimbursements of expenses that Fergus will receive from the Debtor and the Debtor's estate. Fergus seeks to be employed pursuant to 11 U.S.C. §§ 330 and 331.

16. Fergus is not a creditor, an equity security holder or an insider of the Debtor.

17. Fergus is not and was not an investment banker for any outstanding security of the Debtor. Fergus has not been within three years before the Petition Date an investment banker for a security of the Debtor, or an attorney for such an investment banker for any security of the Debtor.

18. Fergus does not hold or represent any interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment bank of any security of the Debtor, or for any other reason.

19. Fergus does not hold or represent any interest materially adverse to the Debtor or the Debtor's estate, and Fergus is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.  Also, to the best of Fergus's knowledge, Fergus has no prior connection with the Debtor, any creditors of the Debtor or its estate, or any other party in interest in this case, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

Executed on this 27 day of March, 2024 at San Francisco, California.

By: _____
GARY FERGUS

# EXHIBIT "1"

333 Mission Street          Phone: (415) 537-9032
14th Floor          gfergus@ferguslegal.com
San Francisco, CA 94105          www.ferguslegal.com



**Gary S. Fergus**
**Biography**

## Experience

**Fergus, A Law Office** – San Francisco, CA                    2002 - Present

- Trial counsel to four asbestos trusts representing Trustees in litigation involving scope of Section 524(g) injunctions as well as interpretation of approved plans.

- Appointed by the Court as the attorney for the Honorable Charles B. Renfrew (Ret.), the Court appointed fiduciary for over 50,000 future asbestos claimants.  Represented Judge Renfrew at trial and in the implementation and administration of four asbestos trusts with collective starting assets of over $3.0 billion dollars: *In re Western Asbestos* (2004); *In re J.T. Thorpe*. (2006); *In re Thorpe Insulation*, (2009); and *In re Plant Insulation Company* (2014).

- Responsible for due diligence on behalf of future asbestos claimants in oversight of trust staff, investment managers as well as monitoring new developments in political climate, financial markets and trust administration issues.  Provide oversight and guidance on development of electronic claims processing systems.  Provide leadership in achieving consensus on controversial issues among stake holders.

- Class counsel in *In re Literary Works* (S.D.N.Y) (2000-2016) worldwide class action representing thousands of free-lance authors whose copyrighted works were infringed by online databases including Lexis-Nexis, Westlaw, Dow-Jones, and Thomson Reuters.  Led coalition to achieve final settlement after challenge in the United States Supreme Court.

- Represent numerous intellectual property clients in disputes and license negotiations.

- Appointed by the bankruptcy court (2002) in the Southern District of New York to represent the Enron bankruptcy estate as the primary trial lawyer in the California and Pacific Northwest Wholesale Electricity litigation involving over $3.0 billion dollars in electricity trades that were challenged by federal, state and local governments as well as consumers.

**Brobeck, Phleger & Harrison, LLP** – San Francisco, CA                    1996 - 2000
**Managing Partner Largest Litigation Group**

- Responsible for management of 30% of firm's annual revenue.  Managed over 40 partners and over 100 associates and support staff, including compensation, recruiting and terminations.  Responsible for long range planning for four practice areas: Products Liability, Insurance Coverage, Environmental and Anti-Trust.

- Forged cross-office teams as early adopter of video conferencing and technology to leverage skill sets and to provide a more stable platform for business development. Provided leadership for measuring contribution in transparent and open dialogue with partners and associates.

- Senior member of firm's operation committee responsible for developing and implementing firm wide polices, working with firm's administrative and executive staff and resolving conflicts between practice groups.

**Brobeck, Phleger & Harrison, LLP** – San Francisco, CA                    1986 - 1999
**Partner and Senior Trial Lawyer**

- Represented clients nationwide in products liability and complex commercial disputes specializing in punitive damage defense. Clients included asbestos manufacturers, medical device manufacturers and pharmaceutical companies. Created and implemented early case management systems to improve productivity. Managed trial teams and was one of the senior trial lawyers.

- Represented railroad in dispute over value of easement for 2,500 miles of fiber optic cable in Southwestern United States. Implement early use of satellite imagery to establish value.

**Brobeck, Phleger & Harrison, LLP** – San Francisco, CA                    1980 - 1986
**Associate**

## Education

- LL.M., cum laude, New York University School of Law                    1981
- J.D., with honors, University of Wisconsin Law School                    1979
  Moot Court Champion, 1979
- B.A., with honors, Stanford University, 1976                    1976

## Distinctions and Affiliations

- Selected for Super Lawyers Northern California Intellectual Property    2020-2024
- Albert Nelson Marquis Lifetime Achievement Award Marquis' Who's         2019
- San Francisco County IP Lawyer, Best of Bay KRON TV 4                   2009
- Martindale-Hubbell AV Peer Rating                              2000 – Present
- Bar Registry of Preeminent Lawyers                              2008 - 2024

2

# EXHIBIT "2"

535 Mission Street
14th Floor
San Francisco, CA 94105

Phone: (415) 537-9030
Fax: (415) 537-9038
www.ferguslegal.com



**FERGUS**
a law office

March 27, 2024

Dana Nye
President
Ben Nye Co., Inc.
3655 Lenawee Avenue
Los Angeles, California 90016

   Re: Engagement Agreement

Dear Mr. Nye,

   I am writing to set forth the engagement agreement **("Engagement Agreement")** between me and Ben Nye Co., Inc. **(the "Company" or "you")** to perform legal services as described below.  By your signature on the enclosed copy of this Engagement Agreement, you are agreeing to its terms as the President of the Company. This Engagement Agreement is effective as of March 27, 2024, **("Effective Date")**.

## 1. **Legal Services to be Provided**

   The Company has requested that I represent the them in connection with the following matters:

### A. **Special Litigation Counsel**

   The Company has filed for protection under the United States Bankruptcy Code and has retained the law firm Levene, Neale, Bender, Yoo & Golubchik L.L.P. as bankruptcy counsel **("Levene")**.  Subject to Bankruptcy Court approval, you have retained me to represent the Company as Special Litigation Counsel to advise you and assist Levene with respect to asbestos personal injury claims in your bankruptcy.

### B. **Modifications**

   The scope of this engagement may be modified in writing signed by both of us.  You agree and understand that I do not practice in the area of taxation or securities and this engagement expressly excludes from its scope

Dana Nye
March 27, 2024
Page 2 of 6

providing any advice or legal services to you with respect to taxes or the
requirements of security laws.

## 2.    Sole Practitioner

I am a sole practitioner admitted to practice in California and I will be
the attorney providing the legal services to you unless otherwise agreed.

## 3.    Fees and Expenses

We have agreed that this engagement is on an hourly basis for fees.
My billing rate is $825 per hour.  Because of the financial circumstances of
the Company, I have agreed to a ten percent discount and will charge only
$742.50 for the services rendered under this Engagement Agreement.

We have agreed that out of pocket expenses will be reimbursed at
cost.  Any extraordinary expenses will be approved in advance (e.g. experts,
travel, etc.).

I bill monthly for fees and expenses incurred.  Payment is due upon
receipt.

## 4.    Responsibilities of Attorney and Client

I will provide strictly legal services to you in connection with this
engagement.  You are not relying on me for, and I am not providing, any
business, investment, insurance or accounting decisions or any investigation
of the character or credit of persons with whom you may be dealing.

In order for me to assist you effectively and efficiently, I expect that
you will provide me with the factual information you have which relates to the
subject matter of our engagement, and that you will make any
appropriate business or technical decisions.  In addition, I encourage you to
share with me at all times your expectations and any concerns regarding our
services at any time during the course of our representation.  I believe that
you or your designee should be actively involved in the strategy and
management of the Company's legal affairs and my goal is to encourage
candid and frequent communication between us.  I will keep you informed of
developments regarding your matters insofar as I am aware of them and will
consult with you as necessary to ensure the timely, effective and efficient
completion of our work.  After my representation of the Company is

Dana Nye
March 27, 2024
Page 3 of 6

concluded, you may request the return of the Company's files.  If you do not
wish the Company's files returned, I will cause them to be destroyed by a
commercial data destruction service, retaining those files and documents
and I deem necessary for my own risk management purposes.

## 5.    Email Communications And Virus Protection

During the course of our engagement, I may exchange electronic
versions of documents and emails with you using commercially available
software.  There is a risk that electronic communications sent by me to you
via email could be intercepted and read by unauthorized individuals.
However, the use of email allows us to communicate effectively and
efficiently.  By signing this Engagement Agreement you specifically authorize
me to use unencrypted email to communicate confidential information to you
and you agree to assume the risk that such communications will be
intercepted.

Unfortunately, the technology community is occasionally victimized by
the creation and dissemination of so-called viruses, or similar destructive
electronic programs.  I take the issues raised by these viruses seriously and
have invested in document and email scanning software that identifies and
rejects files containing known viruses.  I also update my system with the
software vendor's most current releases at regular intervals.  By utilizing this
virus scanning software, my system may occasionally reject a
communication you send to me.  In turn, I may send you something that is
rejected by your system.  This infrequent occurrence is to be expected as
part of the ordinary course of business.

Because the virus protection industry is generally one or two steps
behind new viruses, we cannot guarantee that our communications and
documents will always be virus free.  Occasionally, a virus will escape and go
undetected as it is passed from system to system.  Although I believe my
virus protection measures are excellent, I can make no warranty that my
documents will be virus free at all times.  Please inform me immediately in
the event a virus enters your company's system via any electronic means
originating from me.  Through cooperative efforts we can minimize any
disruption to our communications.

## 6.    Dispute Resolution

I try to maintain good working relationships with my clients.  If you
become dissatisfied with any aspect of our relationship, I encourage you to

Dana Nye
March 27, 2024
Page 4 of 6

bring that to my attention immediately.  It is my belief that most problems can be resolved by a frank and good faith discussion between us.  In the unlikely event further resolution were required, I propose to agree in advance to resolve any such disputes through the less formal and more expeditious process of arbitration.

Examples of the types of disputes which, although unlikely, could possibly develop between us are claims for unpaid fees and expenses, negligence, breach of contract, breach of fiduciary duty, fraud, any claim based on a statute, and likewise any defense or counterclaims.

If a dispute arises between Attorney and Client regarding attorney fees or costs under this agreement and Attorney files suit in any court, or begins an arbitration proceeding other than through the State Bar or a local bar association under California Business and Professions Code §§6200-6206 to resolve the fees or costs dispute, then Client will have the right to stay that suit or arbitration by timely electing to arbitrate the dispute through the State Bar or a local bar association under Business and Professions Code §§6200-6206, in which event Attorney must submit the matter involving costs or fees to that arbitration.

Certain procedures for disputes over fees are provided in California Business and Professions Code Division 3, Chapter 4, Article 13 entitled "Arbitration of Attorneys' Fees."  As a client, you are entitled to elect to arbitrate a fee dispute by complying with the requirements of those procedures, in which case we are required by law to submit to the arbitration.  If you do not elect to arbitrate a fee dispute under those procedures, or if those procedures are waived by you or do not apply, or where the dispute does not involve fees, you and I agree that the dispute shall be submitted to binding arbitration by the American Arbitration Association pursuant to its rules.

It is important for you to note, and I am required by law to be very clear about communicating to you, that discovery, standards of evidence, and procedural rules differ in arbitration from a civil trial.  In addition, in order to utilize this process, both you and I agree in this letter to forego the right to a trial by a judge or jury.

Accordingly, it is agreed between you and I that any dispute which cannot be resolved amicably shall be resolved exclusively through binding arbitration as outlined above.  Of course, you should carefully consider this

Dana Nye
March 27, 2024
Page 5 of 6

provision and, to the extent you feel it necessary, seek the advice of an independent attorney before agreeing to it.

Separate initials indicate specific agreement with this arbitration provision.

**DN** Dana Nye (initials)

**7.    Right to Seek Advice of Independent Counsel**

The Company should seek the advice of independent counsel to advise it with respect to entering into this agreement.

**8.    Right to Terminate/ Right to Withdraw**

The attorney-client relationship is one of mutual trust and confidence. You retain the right to discharge me at any time on written notice.  If I am your attorney of record in any proceeding at the time you discharge me, you agree to execute and return a substitution-of-attorney form immediately on its receipt from me.

I retain the right to withdraw from your case at any time on reasonable notice if continued representation could involve me in ethical violations, if a lack of cooperation by you prevents me from properly pursuing your case, or for other good cause such as nonpayment of attorney fees and costs. If the need to withdraw arises, or if you choose to retain other counsel and discharge me or to drop the case before settlement or judgment, then I am entitled to payment for all my fees and costs to date regardless of the ultimate outcome of the case.

**11.    Insurance**

Attached as **Exhibit A** is copy of my current professional liability insurance disclosures.

**12.    Governing Law**

This engagement letter shall be governed by and construed in accordance with the laws of California, except for those laws relating to conflicts of law.

Dana Nye
March 27, 2024
Page 6 of 6

## 13. Signature

Please review this letter carefully and, if it is consistent with your understanding of our respective responsibilities, please return a signed copy, including your initials at paragraph 6, to me at your earliest convenience. Enclosed is an additional copy of this Engagement Agreement which you should retain for your records.

## 14. Counter Parts and Electronic Copies

This Engagement Agreement may be executed in counterparts and together shall be considered the fully executed original document. This Engagement Agreement may be delivered electronically and electronic signatures shall be deemed original signatures and electronic copies of the fully executed document shall be considered an original.

I am looking forward to working with you. Please do not hesitate to call me if you have any questions concerning anything outlined in this letter or any other aspect of our engagement.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Gary S. Fergus
gfergus@ferguslegal.com
(415) 537-9032


ACKNOWLEDGED AND AGREED

Ben Nye Co., Inc.

Dated: _March 28, 2024_    By: _____
                                Dana Nye
                                President

**EXHIBIT A**



## PROFESSIONAL LIABILITY POLICY
### THE DECLARATIONS

ATTACHING TO AND FORMING PART OF **POLICY NO.**:          **016412-ST-023**

1. **NAMED INSURED AND ADDRESS**:
   GARY S. FERGUS
   FERGUS, A LAW OFFICE
   INDIVIDUAL
   535 MISSION STREET, 14TH FLOOR
   SAN FRANCISCO, CA 94105

2. **LAWYERS WHO ARE PARTNERS OF, STOCKHOLDERS IN, OR EMPLOYEES OF THE NAMED INSURED:**
   SEE Prior Acts Inclusion Endorsement Attached

3. **PREDECESSOR FIRM:**
   NONE

4. **EFFECTIVE DATE OF THIS POLICY:**          **12-28-2023**
   12:01 a.m. PDT

5. **EXPIRATION DATE OF THIS POLICY:**          **12-28-2024**
   12:01 a.m. PDT

6. **POLICY PREMIUM:**                          REDA

7. **LIMITS OF LIABILITY:**

   | | |
   |---|---|
   | LIMIT OF LIABILITY EACH CLAIM: | $2,000,000 |
   | LIMIT OF LIABILITY POLICY AGGREGATE: | $4,000,000 |
   | DEDUCTIBLE (CLAIMS EXPENSE & DAMAGES): | $5,000 |

   -See Policy Provisions for Full Description-

8. **FORMS AND ENDORSEMENTS FORMING A PART OF THIS POLICY:**
   UNIVERSAL POLICY - 4.1.2023; PAIE; TRIA-2002; CYBER

THESE DECLARATIONS, UNIVERSAL POLICY - 4.1.2023 AND ENDORSEMENTS AS LISTED IN ITEM 8 ABOVE, CONSTITUTE THIS POLICY, NUMBERED ABOVE.

DATE OF TRANSACTION: 12-07-2023          By: _____
                                             Lawyers' Mutual Insurance Company

# PROOF OF SERVICE OF DOCUMENT

1

2
I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  2818 La Cienega Avenue, Los Angeles, CA 90034

3

4
A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S APPLICATION TO EMPLOY FERGUS, A LAW OFFICE AS SPECIAL LITIGATION COUNSEL; DECLARATION OF GARY FERGUS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

5

6

7
**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On _**March 29, 2024**_ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

8

9

10

11

12
- Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com
- John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com
- Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
- Eve H. Karasik    ehk@lnbyg.com
- Matthew A Lesnick    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- Noreen A Madoyan    Noreen.Madoyan@usdoj.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

13

14

15

16
**2.  SERVED BY UNITED STATES MAIL**:
On _**March 29, 2024**_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

17

18
United States Trustee
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

☐ Service information continued on attached page

19

20

21

22
**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _**March 29, 2024**_, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

23
None.

☐ Service information continued on attached page

24

25
I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

26
| March 29, 2024 | D. Woo | /s/ D. Woo |
|---|---|---|
| Date | Printed Name | Signature |

27
This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

28